# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**BRENDA M. STEWART,**

      **Plaintiff,**

v.                                   Civil Action 2:20-cv-4391
                                           Judge Michael H. Watson
                                           Magistrate Judge Jolson

**COMMISIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Brenda M. Stewart, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**     **BACKGROUND**

Plaintiff protectively filed her application for SSI on August 29, 2017, alleging disability beginning May 21, 2016. (Doc. 14, Tr. 205–09). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on September 19, 2019. (Tr. 35–58). On October 15, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 27, 2020 (Doc. 1), and the Commissioner filed the administrative record on February 16, 2021

(Doc. 14).  Plaintiff filed her Statement of Errors on April 28, 2021, and this matter is now ripe for consideration.  (*See* Docs. 18, 20, 21).

### A. Relevant Medical History and Hearing Testimony

Because Plaintiff's statement of errors pertains to only her physical impairments, the Undersigned limits her discussion of the medical record and hearing testimony to the same.

*1. Medical History*

The medical evidence of record shows that [Plaintiff] has degenerative disc disease of the spine (Exhibits D9F, p. 14). A computed tomography (CT) scan of the lumbar spine in June 2017 revealed stable severe degenerative disc changes at L5-S1 (Exhibit D9F, p. 14). However, [Plaintiff] has specifically denied having any back pain or any falls during the period at issue in this case (Exhibit D24F, p. 7). Additionally, she has not received any specific treatment for this condition since her current application date. Although [Plaintiff] was noted to be using a cane on a couple of occasions during her medical appointments, there is no indication from the record that a cane is medically necessary (Exhibits D17F, p. 2 and D24F, p. 3).

The record indicates that [Plaintiff] has a history of seizure disorder (Exhibit D7F, p. 2). [Plaintiff] has reported experiencing small seizures or absence-type spells and intermittent hand tremors (Exhibits D7F, p. 2; D8F, p. 2; and D24F, pp. 1, 5, 8). However, her doctor indicated that the hand tremors are predominantly anxiety-related (Exhibit D24F, p. 9). Neurological examinations of record have been normal (Exhibits D8F, p. 3; D17F, p. 21; and D24F, p. 3). Additionally, a CT scan of her brain in February 2018 was normal, as has been prior work-ups and electroencephalograms (EEGs) (Exhibits D22F, p. 1 and D24F, pp. 8, 10). [Plaintiff] has been prescribed Gabapentin and Phenytoin to treat this condition (Exhibit D8F, p. 2 and D24F, p. 4). Her seizure disorder has been stable on medication (Exhibit B17F, p. 23).

The evidence demonstrates that [Plaintiff] has diabetes mellitus with diabetic retinopathy and diabetic neuropathy (Exhibits D25F, p. 1). [Plaintiff] has presented to the doctor with elevated blood glucose and A1c levels (Exhibits D17F, pp. 22, 26). She has reported intermittent low blood sugar (Exhibits D17F, p. 19). She indicated that she experiences bilateral foot and toe pain consistent with diabetic neuropathy (Exhibit D25F, p. 4). However, physical examinations of her lower extremities have generally been unremarkable, with some diminished proprioception sensation (Exhibits D21F, p. 2 and D25F, pp. 2, 5). She has been prescribed diabetic shoes (Exhibit D17F, p. 18). She has also been prescribed Metformin, Glyburide, and Januvia to help regulate her blood sugar and has been prescribed Folbee to treat her neuropathy (Exhibits D17F, pp. 19, 23 and D25F, p. 4). Her condition is considered to be uncontrolled (Exhibits D17F, p. 23).

> Nevertheless, the current file does not document any significant issues or treatment for diabetic retinopathy.
>
> The medical evidence suggests that [Plaintiff] has a history of [Deep Vein Thrombosis] ("DVT") (Exhibit D5F, p. 8). However, [Plaintiff] has not had any DVT issues since her application date (Exhibit D24F, p. 4).

(Tr. 23–24).

   2.  *Relevant Hearing Testimony*

   The ALJ also summarized Plaintiff's hearing testimony:

> [Plaintiff] testified at the hearing to the following: She stated that she has little seizures that cause her to have tremors. She remarked that she had surgery on her trigger thumb in June 2017. She noted that she has numbness in her hands, feet, and legs. She maintained that she needs to elevate her legs every day for about an hour up to twice per day to reduce the swelling, and that at times she has to stand for a while before sitting back down. She reported that she has a ruptured disc in her back and that part of it has broken off and is floating around in her back, causing lower back pain that radiates into her lower extremities. She noted that she is not able to able to sit for long periods of time because of her back problems. She mentioned that she has headaches two to three times per week, with associated nausea and vomiting. She remarked that she has vomited for an entire day with her severe headaches. She stated that she uses a cane constantly for balance because she has a brace on her right foot. [ ]

(Tr. 23).

   **B. The ALJ's Decision**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 29, 2017, the application date. (Tr. 19). He then determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the spine, history of seizure disorder, diabetes mellitus, diabetic retinopathy, diabetic neuropathy, history of DVT, depressive disorder, and generalized anxiety disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 20).

   As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

3

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can occasionally operate foot controls; can have no exposure to commercial driving, moving machinery, or unprotected heights. Mentally, [Plaintiff] retains the ability to understand, remember, and carry out simple, repetitive tasks; able to respond appropriately to supervisors and co-workers in a task-oriented setting with only occasional public contact and occasional interaction with co-workers; and able to respond to simple changes and avoid hazards in a setting without strict production quotas.

(Tr. 22).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (Tr. 23).

The ALJ then considered to the opinion evidence, turning first to the state agency consultants' physical assessments:

> The State agency medical consultants' physical assessments are not persuasive (Exhibits 3A and 5A). Their indication that the claimant is capable of performing a range of light work is not consistent with or supported by the medical evidence of record. While the undersigned agrees that the claimant's physical impairments have improved somewhat since the prior ALJ decision, because of the claimant's objective lumbar spine findings as well as diabetic neuropathy continue to support a limitation to a range of sedentary work (*See* Exhibits D9F, p. 14 and D21F, p. 2). Therefore, the State agency physical assessments are not persuasive.

(Tr. 24–25).

Next, the ALJ considered the opinions of nurse practitioner Beth Harper and occupational therapist Kristy M. Bockrath, who opined that Plaintiff would have difficulty working due to numerous physical limitations. (Tr. 25). The ALJ found their opinions "not persuasive," explaining they are not "consistent with or supported by the medical evidence of record." (*Id*.).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a deli assistant or retail sales clerk, but could perform jobs that exist in significant

4

numbers in the national economy, such as a laminator, document specialist, or film touch-up inspector. (Tr. 26–27). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 29, 2017, the date the application was filed (20 CFR 416.920(g))." (Tr. 27).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff asserts that the ALJ improperly evaluated the opinions of her primary care nurse practitioner, Beth Harper, and occupational therapist, Kristy M. Bockrath. (Doc. 18 at 9–13). In December 2018, Ms. Harper opined that Plaintiff's physical conditions affect her ability to participate in meaningful employment. (Tr. 924). In June 2019, Ms. Harper similarly wrote that Plaintiff's conditions make full time employment difficult. (Tr. 957). The following month, Ms. Harper noted that Plaintiff had not been able to maintain employment due to chronic health issues

5

and experienced physical limitations, including balance, dizziness, strength, sensation, and tremors. (Tr. 925). In that opinion, Ms. Harper also adopted Ms. Bockrath's July 19, 2019 functional capacity evaluation ("FCE"). (Tr. 926–29). In her FCE, Ms. Bockrath tested Plaintiff's exertional abilities and opined, in sum, that Plaintiff's "limitations overall included balance, dizziness, strength, range of motion, sensation, [and] tremors." (Tr. 928).

> The ALJ said the following about Ms. Harper and Bockrath's opinions:
>
> The opinions of Beth Harper, A.P.R.N.-C.N.P., [Plaintiff]'s own medical source, and Kristy M. Bockrath, O.T. are not persuasive (Exhibits D20F, D21F, and D26F). Ms. Harper's adoption of the functional capacity evaluation provided by Ms. Bockrath is not consistent with or supported by the medical evidence of record. While they indicated that some of [Plaintiff]'s limitations included balance, dizziness, strength, and tremors, this assessment appears to be largely based upon [Plaintiff]'s subjective complaints during her assessment (Exhibit D21F, p. 4). For instance, [Plaintiff] reported that she is dizzy 50 percent of the day, but this severity of dizziness is not noted in the record (Exhibit D21F, p. 2). Nevertheless, her balance and dizziness issues have been accommodated herein with environmental limitations to the extent that they are supported by the evidence. The record also does not document any significant weakness. Furthermore, while the record does document tremors, her doctor indicated that they are predominantly anxiety-related and [Plaintiff] has admitted that her tremors are only intermittent (Exhibit D24F, p. 9). Additionally, Ms. Harper's indication that [Plaintiff]'s impairments "affect her ability to participate in meaningful employment" and make full-time employment "difficult" are not sufficiently specific to be helpful in determining [Plaintiff]'s residual functional capacity (Exhibits D20F, p. 1 and D26F, p. 1). Additionally, neither of these opinions provide specific physical examination findings or objective test results in support of her assertions. Therefore, Ms. Harper's and Ms. Bockrath's opinions are not persuasive.

(Tr. 25).

Plaintiff contends that the ALJ violated the revised regulations governing medical opinions. (Doc. 18 at 9–13). Because Plaintiff filed her application after March 27, 2017, the Undersigned applies the revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017). Those regulations describe five different categories of evidence: (1) objective medical evidence,

6

(2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, the ALJ is generally not required to do so. *Id*. Still, if an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how he [or she] considered the other most persuasive factors[.]" §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how he [or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id*.

The ALJ abided by the revised regulations when considering Ms. Harper and Bockrath's opinions. To start, regarding Ms. Harper's broad opinions that Plaintiff's impairments "affect her ability to participate in meaningful employment" and make full-time employment "difficult," the ALJ properly concluded that these opinions "are not sufficiently specific to be helpful in determining [Plaintiff]'s residual functional capacity." (Tr. 25). The revised regulations do not require an ALJ to adopt or accept a medical source's vague opinions. *See, e.g.*, *Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *4 (S.D. Ohio July 1, 2021) (applying revised regulations and finding that ALJ properly discounted vague medical opinion that plaintiff "was 'likely' to have difficulties").

As noted, though, the majority of Plaintiff's brief focuses on the "supportability" and "consistency" factors under the revised regulations. (Doc. 18 at 9–13). As explained below, the ALJ satisfied each.

### A. Supportability

Plaintiff says that, because Ms. Bockrath supported her FCE with specific objective findings, the ALJ erred in concluding that her opinion was not well-supported. (Doc. 18 at 11). True, Ms. Bockrath tested Plaintiff's exertional abilities and provided the results. But the ALJ found those results and corresponding limitations unsupported by the record. (Tr 25). The revised regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ engaged in that analysis here.

To start, the ALJ noted that Ms. Bockrath's opinion "appears to be largely based upon [Plaintiff's] subjective complaints during her assessment." (Tr. 25). The ALJ provided an example.

8

He noted, "[f]or instance, [Plaintiff] reported [during the assessment] that she is dizzy 50 percent of the day, but this severity of dizziness is not noted in the record." (*Id*.). An ALJ is vested with discretion to evaluate all of the evidence of record and may properly conclude that a claimant's subjective complaints are not entirely consistent with or supported by the record. *See, e.g.*, *Newsome v. Saul*, No. 6:20-CV-63-HAI, 2021 WL 1582765, at *4 (E.D. Ky. Apr. 22, 2021) (holding that ALJ complied with revised regulations in discounting medical source's opinion that was based upon claimant's subjective complaints). Still, the ALJ accommodated Plaintiff's balance and dizziness issues "with environmental limitations to the extent that they are supported by the evidence." (*Id*.). Specifically, the RFC says that Plaintiff "can have no exposure to commercial driving, moving machinery, or unprotected heights." (Tr. 22). And Plaintiff does not assert that these restrictions fail to accommodate her problems with balance or dizziness.

Additionally, as for Ms. Bockrath's opinion that Plaintiff's "strength" limits her ability to work, the ALJ noted that "[t]he record also does not document any significant weakness." (Tr. 25). And regarding Ms. Bockrath's opinion that Plaintiff's tremors affect her ability to work, the ALJ acknowledged that "the record does document tremors," but that Plaintiff's "doctor indicated that they are predominantly anxiety-related and [Plaintiff] has admitted that her tremors are only intermittent." (Tr. 25 (citing Ex. D24F, p. 9)).

In sum, the ALJ applied the supportability factor and concluded that Ms. Bockrath's FCE findings and Ms. Harper's adoption of the same were not supported by the record. That is all the regulations require, and Plaintiff has shown no error in this regard.

### B. Consistency

Plaintiff additionally contends that the ALJ failed to satisfy the "consistency" requirement. (Doc. 18 at 11–12). Under the revised regulations, "[t]he more consistent a medical opinion(s) . . .

is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). Importantly, in deciding whether the ALJ assessed this factor, the Court reviews the ALJ's opinion as a whole. *See, e.g.*, *Buege v. Comm'r of Soc. Sec.*, No. 20-CV-1097-TMP, 2021 WL 2822043, at *7 (W.D. Tenn. July 7, 2021) (finding that ALJ properly applied consistency factor where "ALJ elaborated on several aspects of the record that illustrate his concerns with [medical source's] opinion in earlier sections of his decision"). And when reading the ALJ's opinion as a whole, it is clear that the ALJ properly applied the consistency factor when considering Ms. Bockrath's opinion.

To begin, regarding Ms. Bockrath's opinion that Plaintiff should avoid walking, the ALJ, earlier in his opinion, discussed Plaintiff's ability to walk in the context of her spinal issues and diabetes. The ALJ acknowledged that the "record shows that [Plaintiff] has degenerative disc disease of the spine." (Tr. 23). Yet, "[Plaintiff] has specifically denied having any back pain or any falls during the period at issue in this case." (*Id.* (citing Ex. D24F, p. 7)). The ALJ further noted that Plaintiff "has not received any specific treatment for this condition since her current application date." (Tr. 23). While Plaintiff "was noted to be using a cane on a couple of occasions during her medical appointments, there is no indication from the record that a cane is medically necessary." (*Id.* (citing Ex. D17F, p. 2 and D24F, p. 3)). On a similar note, the ALJ recognized Plaintiff's "bilateral foot and toe pain consistent with diabetic neuropathy," (Tr. 24 (citing Ex. D25F, p. 4)), but "physical examinations of her lower extremities have generally been unremarkable, with some diminished proprioception sensation," (Tr. 24 (citing Ex. D21F, p. 2 and D25F, pp. 2, 5)). The ALJ further noted that Plaintiff "has been prescribed diabetic shoes," (Tr. 24 (citing Ex. D17F, p. 18)) and "has also been prescribed Metformin, Glyburide, and Januvia to help regulate her blood sugar and has been prescribed Folbee to treat her neuropathy," (Tr. 24 (citing

10

Ex. D17F, pp. 19, 23 and D25F, p. 4)). Finally, while the ALJ recognized that Plaintiff's "condition is considered to be uncontrolled," (Tr. 24 (citing Ex. D17F, p. 23)), "the current file does not document any significant issues or treatment for diabetic retinopathy," (Tr. 24).

Additionally, concerning Ms. Bockrath's opinion that Plaintiff's tremors affect her ability to work, the ALJ, in addition to noting that Plaintiff's tremors are anxiety-related (Tr. 25), discussed Plaintiff's tremors earlier in his opinion. He noted that "[n]eurological examinations of record have been normal." (Tr. 23 (citing Ex. D8F, p. 3; D14F, p. 21; and D24F, p.3)). And, "a CT scan of her brain in in February 2018 was normal, as has been prior work-ups and [] EEGs." (Tr. 23 (citing Ex. D22F, p. 1 and D24F, pp. 8, 10)). On top of that, the ALJ recognized that Plaintiff's "seizure disorder has been stable on medication." (Tr. 23 (citing Ex. B17F, p. 23)).

"Because these observations were already in the opinion, the ALJ did not err by not repeating them when discussing how he considered [Ms. Bockrath's] examination." *Buege*, 2021 WL 2822043, at *7 (citing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.")) (finding that ALJ satisfied "consistency" requirement of revised regulations by "elaborat[ing] on several aspects of the record that illustrate his concerns with [medical source's] opinion in earlier sections of his decision").

Finally, as for some of Ms. Bockrath's other exertional limitations, for example, climbing ladders, the ALJ accommodated these limitations in his RFC. (*See* Tr. 22 (limiting Plaintiff to sedentary work and stating that Plaintiff should "never climb ladders")). Importantly, Plaintiff does not explain how Ms. Bockrath's other exertional limitations, for example, on power lifting, are not accommodated by the sedentary RFC.

11

\* \* \*

To summarize, the ALJ complied with the revised regulations when he explained that Ms. Harper and Bockrath's opinions were unsupported by and inconsistent with the record, and therefore, unpersuasive. This explanation fit well within the regulatory framework, *see* 20 C.F.R. § 404.1520c(a), (b), and provided an accurate and logical bridge for the Undersigned to trace the ALJ's reasoning, *see Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citations omitted). While Plaintiff refers to other evidence that might support a different conclusion, (*see generally* Doc. 18 at 9–13), "[e]ven if a preponderance of the evidence would have supported a finding that [Ms. Harper and Bockrath's] opinions were persuasive—and even if we might have agreed with [Plaintiff] on *de novo* review—this [C]ourt is not permitted to decide the facts anew or re-weigh the evidence," *Fitzwater v. Comm'r of Soc. Sec.*, No. 1:20-CV-1456, 2021 WL 2555511, at \*9 (N.D. Ohio June 4, 2021), *report and recommendation adopted*, No. 1:20 CV 1456, 2021 WL 2550985 (N.D. Ohio June 22, 2021) (citations omitted). Because the ALJ followed the regulatory requirements, the Court cannot "second-guess" his findings. *Id*. (citations omitted).

## IV.  CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection

is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   August 10, 2021                         /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE